UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────────

SCOTT LESSON,

                                        Plaintiff,


v.                                                        1:25-cv-0188
                                                          (AMN/TWD)


JANE DOE / STATE TROOPER,

                                        Defendant.

───────────────────────────────────────────

APPEARANCES:

SCOTT LESSON
*Plaintiff, pro se*
1 Colonial Road
Stillwater, NY 12170

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## **REPORT-RECOMMENDATION AND ORDER**

### I.    **INTRODUCTION**

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Scott

Lesson ("Plaintiff") asserting a claim pursuant to 42 U.S.C. § 1983.  *See* Dkt. No. 1.  Plaintiff

also seeks leave to proceed *in forma pauperis* ("IFP").  *See* Dkt. No. 4.

### II.    **IFP APPLICATION**

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  Dkt.

No. 4.  Upon review, Plaintiff's IFP application demonstrates economic need.  *See id*.  Therefore,

he is granted permission to proceed IFP.[1]

─────────────────────

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he
may incur in this action, including copying and/or witness fees.

### III.    BACKGROUND

Plaintiff states he was riding his bike in the village of Stillwater when he "was flowed by a couple youths claiming I stole there bike." Dkt. No. 1 at 4.[2]  The complaint does not indicate when this occurred, beyond "in the summertime of 2 [sic]." *See id*.

He arrived at "Stewarts in the village of stillwater" where he was "approached by a female State Trooper" who "asked what was going on[.]" *Id*.  Plaintiff avers he "took out my phone and begane to recorde the insitent[.]" *Id*.

As he walked towards his bike recording the incident, Plaintiff alleges "the trooper, Attacked me unprovoked and tried to take my legs out from underneath me[.]" *Id*.  He believes "she was trying to detanin me with unessery force and also didnt inform me I was being detend or why[.]" *Id*.  Plaintiff "let her handcuff" him on the ground and "was then taken to the trooper station where I was released of all charges." *Id*.

The complaint contains a claim for use of force, in violation of the Fourth Amendment. *Id*. at 5.  Plaintiff seeks $2,000,000 in damages, as well as a "MENTAL EVAL FOR TROOPER IN QUESTION." *Id*.

### IV.    LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141

---

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable

inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

Upon review, even afforded a liberal construction, Plaintiff's complaint fails to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure and fails to state a claim.  Therefore, the undersigned recommends dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

"The [Second Circuit]'s 'special solicitude' for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure." *Lewis v. New York State Bd. of Elections*, No. 8:24-CV-00849 (GTS/CFH), 2024 WL 4910561, at *4 (N.D.N.Y. Sept. 30, 2024) (additional quotations and citations omitted), *report and recommendation adopted*, 2024 WL 4689022 (N.D.N.Y. Nov. 6, 2024).  Under Rule 10, a party is required to:

> state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading

> may refer by number to a paragraph in an earlier pleading.  If doing
> so would promote clarity, each claim founded on a separate
> transaction or occurrence--and each defense other than a denial--
> must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).  "The purpose of Rule 10 is to provide an easy mode of identification for

referring to a particular paragraph in a prior pleading . . . ."  *Flores v. Graphtex*, 189 F.R.D. 54,

55 (N.D.N.Y. 1999) (internal quotations and citations omitted).

A complaint that fails to comply with the Federal Rules' pleading requirements "presents

far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and

provides no meaningful basis for the Court to assess the sufficiency of their claims," and may

properly be dismissed by the Court.  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996);

*see also*, *e.g.*, *Gosier v. Collins*, No. 6:23-CV-1485 (DNH/TWD), 2024 WL 1016392, at *2

(N.D.N.Y. Mar. 8, 2024), *report and recommendation adopted*, 2024 WL 1307035 (N.D.N.Y.

Mar. 27, 2024).  Here, Plaintiff has failed to organize the factual allegations in numbered

paragraphs as required by Rule 10.  Additionally, Plaintiff has not pleaded enough facts to state a

plausible excessive force claim.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force

by a police officer in the course of effecting an arrest."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d

Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  To succeed on an excessive

force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was

objectively unreasonable in light of the facts and circumstances confronting them, without regard

to their underlying intent or motivation."  *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491

(N.D.N.Y. 2017) (internal quotations omitted).  The "objective reasonableness" inquiry is "case

and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's

Fourth Amendment interests against the countervailing governmental interests at stake."  *Tracy*,

623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

In the instant complaint, Plaintiff avers the Jane Doe State Trooper "attacked [him] unprovoked and tried to take my legs out from underneath me," and tried to "detanin me with unessery force . . . ." Dkt. No. 1 at 4. The complaint does not explain *how* the Doe Defendant "attacked" plaintiff or specify what "force" was used against him. These allegations, without more, fail to plausibly allege a Fourth Amendment excessive force claim. *See, e.g.*, *Gosier*, 2024 WL 1016392, at *9 (recommending "Plaintiff's Section 1983 excessive force claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim" where the plaintiff claimed "he was 'unlawfully pulled out of [his] car,' 'handcuffed' and subjected to a 'pat down search.'"); *Robinson v. Hallett*, No. 5:19-CV-406 (MAD/ATB), 2020 WL 1227142, at *4 (N.D.N.Y. Mar. 13, 2020) (explaining the plaintiff failed to plausibly allege an excessive force claim where he "did not allege what 'force' was exerted and how it was 'excessive.'").

As previously stated, before dismissing *a pro se* complaint or any part of the complaint *sua sponte*, the Court should generally afford the plaintiff an opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Here, the undersigned recommends Plaintiff be afforded leave to amend.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff must provide a short and plain statement of the relevant facts supporting his claim against any Defendant named in the amended

complaint.  Plaintiff should describe all relevant facts supporting his case, including the date and time, to his best approximation.  Plaintiff must also describe how the Defendant's acts or omissions violated his rights and the paragraphs should be correctly numbered.  Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his amended complaint by reference.  Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.  If Plaintiff is alleging the Defendant violated a law, he should specifically refer to such law.  Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 4) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** for failure to state a claim with leave to amend; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of

---

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have

the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

**WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

      **IT IS SO ORDERED.**

Dated:  March 26, 2025
         Syracuse, New York

                Thérèse Wiley Dancks
                United States Magistrate Judge

---

seventeen days from the date the Report-Recommendation and Order was mailed to you to serve
and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a
Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2024 WL 4910561
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

NEW YORK STATE BOARD OF ELECTIONS, Defendant.
Scott Phillip Lewis, Plaintiff,

v.

New York State Board of Elections, Defendant.

No. 8:24-CV-00849 (GTS/CFH), No. 8:24-CV-01036 (GTS/CFH)

|

Signed September 30, 2024

**Attorneys and Law Firms**

Scott Phillip Lewis, 1936 Saranac Avenue, #3, PMB 411, Lake Placid, New York 12946, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

**I. In Forma Pauperis**

**\*1** Plaintiff pro se Scott Lewis ("plaintiff")[1] purported to commence this action on July 4, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2]

[1]  The undersigned notes that plaintiff is a particularly litigious individual who has filed numerous other actions that are presently pending in this District, as well as others. See, e.g., Lewis v. Town of Elizabethtown, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024), Dkt. No. 9 (dismissing complaint with leave to amend); Lewis v. Adirondack Med. Ctr., 1:24-CV-00376 (BKS/TWD) (N.D.N.Y. filed Mar. 19, 2024), Dkt. No. 4 (Report-Recommendation recommending dismissal pending review); Lewis v. Paymaster Payroll Sys., Inc., 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); Lewis v. Walsh, 8:24-CV-00098 (GTS/CFH) (N.D.N.Y. filed Jan. 21, 2024), Dkt. No. 5 (Report-Recommendation recommending dismissal pending review); Lewis v. Essex Cnty., 8:24-CV-00100 (MAD/CFH) (N.D.N.Y. filed Jan. 19, 2024), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. Despos, LLC, 8:24-CV-00079 (AMN/CFH) (N.D.N.Y. filed Jan. 17, 2024), Dkt. No. 12 (dismissing complaint without leave to amend); Lewis v. R. L. Vallee, Inc., 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Affiliated Enter. Sol., LLC, 8:24-CV-00061 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Redline Hockey, LLC, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Citizens United, Inc., 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 25 (dismissing amended complaint); Lewis v. Adirondack Med. Ctr., 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v.

2024 WL 4910561

Onondaga Cnty., 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 21 (dismissing complaint with leave to amend); Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 15 (partially dismissing complaint, permitting one claim to proceed); Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. State of Texas, 1:24-CV-00461 (ADA) (W.D. Tex. filed Apr. 25, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:24-CV-03092 (LTS) (S.D.N.Y. filed Apr. 20, 2024); Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 152 (granting summary judgment in favor of the defendants and dismissing the plaintiff's claims with prejudice).

2    Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

## II. Consolidation

**\*2**   "Rule 42(a) of the Federal Rules of Civil Procedure provides for the consolidation of actions pending before the court which involve 'a common question of law or fact.' " Boyde v. Uzunoff, No. 9:21-CV-0741 (TJM/ATB), 2021 WL 3185472, at \*1 (N.D.N.Y. July 28, 2021) (quoting FED. R. CIV. P. 42(a)(2)). "As the Second Circuit has recognized, '[t]he trial court has broad discretion to determine whether consolidation is appropriate,' and may consolidate actions sua sponte." Id. (quoting Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990), and citing Devlin v. Transp. Commc'ns Intern. Union, 175 F.3d 121, 130 (2d Cir. 1999)); see Innovation Ventures v. Ultimate One Distrib. Corp., No. 12-CV-5354 (KAM/RLM), 2014 WL 824304, at \*2 (E.D.N.Y. Mar. 3, 2014) ("A court may consolidate related cases sua sponte under Rule 42(a).") (citation omitted). "The Court must consider in each case the possible risks and benefits of consolidation." Boyde, 2021 WL 3185472, at \*1; see Jacobs v. Castillo, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) ("Consolidation ... further[s] the goal of 'judicial economy' because discovery in each case is likely to be identical, motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). "The paramount concern is whether savings of expense and gains of efficiency can be accomplished without sacrifice of justice." Wolm v. Ahern, No. 14-CV-3978 (JFB/GRB), 2014 WL 5171763, at \*1 (E.D.N.Y. Oct. 8, 2014) (citing Johnson, 899 F.2d at 1285).

Here, plaintiff commenced the instant case, 8:24-CV-00849, Lewis v. New York State Board of Elections (hereinafter "Lewis I"), on July 4, 2024. See Compl. (hereinafter "Compl. I"). Nearly seven weeks later, on August 21, 2024, plaintiff commenced a second action, 8:24-CV-01036, Lewis v. New York State Board of Elections (hereinafter "Lewis II"), with the filing of a separate complaint (hereinafter "Compl. II"). The undersigned has reviewed both complaints in each action, and has determined "that common questions of law and fact exist in these cases." Boyde, 2021 WL 3185472, at \*1. "Plaintiff appears to name the same defendant[, the New York State Board of Elections,] and to the extent it can be determined, the cases arise out of the same facts and circumstances and raise the same claims in [both] of these ... actions." Lamothe v. Brown, No. 5:22-CV-161 (TJM/CFH), 2023 WL 316013, at \*1 (D. Vt. Jan. 19, 2023), report and recommendation adopted, 2023 WL 3301220 (D. Vt. May 8, 2023). Notably, both of the complaints filed by plaintiff challenge the constitutionality of New York State's election laws,[3] and his claims derive from his "run to represent New York State's 21st Congressional District" in the upcoming November 2024 general election. Compl. I at 3; Compl. II at 5.[4] Thus, "[c]onsolidating these actions will avoid 'unnecessary repetition and confusion.' " Royal v. Shulkin, No. 1:17-CV-1251 (GTS/CFH), 2018 WL 1229701, at \*1 (N.D.N.Y. Jan. 5, 2018) (quoting Miller v. U.S. Postal Serv., 729 F.2d 1033, 1036 (5th Cir. 1984)), report and recommendation adopted, 2018 WL 1229822 (N.D.N.Y. Mar. 8, 2018); see Morales v. Pallito, No. 1:13-CV-141, 2013 WL 3148411, at \*1 (D. Vt. June 19, 2013) ("[The plaintiff] is bringing the same claim against the same [d]efendant in both cases. [The defendant] has not yet been served and, consequently, there has been no responsive pleading and no discovery. The Court thus finds that the interests of justice will be best served by consolidation, as carrying these two actions forward as one enhances judicial economy, with no prejudice to any party.").

3    In Lewis I, plaintiff challenges the constitutionality of sections 6-132, 6-134, 6-136, 6-140, 6-142, and 6-158 of the New York Election Law. See generally Compl. I. In Lewis II, plaintiff challenges the constitutionality of section 16-102 of the New York Election Law. See generally Compl. II.

4    Citations are to the pagination generated by CM/ECF, located in the header of each page.

**\*3**    Accordingly, it is recommended that these two cases be consolidated, with Lewis I as the lead case, and Lewis II as a member case.

## III. Initial Review

### A. Legal Standard

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."[5] 28 U.S.C. § 1915(e)(2)(B).[6] "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action. Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

5    " 'A case is malicious if it was filed with the intention or desire to harm another.' " Tafari v. Hues, 473 F.3d 440, 442 (2d Cir. 2007) (quoting Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005)). A case "is frivolous when it 'lacks an arguable basis either in law or in fact' " and "advances 'inarguable legal conclusion[s]' or 'fanciful factual allegation[s].' " Id. (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)).

6    These requirements apply to non-prisoner pro se litigants. See N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ....

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).[7] Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the

2024 WL 4910561

claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

7      The undersigned notes, however, that the Second Circuit has "occasionally endorsed some limited forms of this practice, and ha[s] suggested that it may be appropriate 'to charge a pro se litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements [of the legal system] with which he is familiar as a result of his extensive prior experience in the courts.' " Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (quoting Sledge v. Kooi, 564 F.3d 105, 109 (2d Cir. 2009), and citing Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994) (denying a pro se plaintiff an opportunity to replead on the ground that he was "an extremely litigious inmate who [wa]s quite familiar with the legal system and with pleading requirements")); see Shomo v. Furco, No. 18-CV-8523 (VB), 2020 WL 4194941, at *4 (S.D.N.Y. July 20, 2020) (determining that "the deference usually granted to pro se plaintiffs need not be expansively drawn in this case," given that the pro se plaintiff previously filed "at least ten lawsuits and appeals [and] was familiar with court procedure") (citations omitted).

 *4   "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). [8]  Notably, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction ... and (3) a demand for the relief sought ...." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

8      All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**B. Plaintiff's Complaint**

Plaintiff offers us a brief history lesson on the two-party political system in the United States. See Compl. I at 1-3. As relevant here, plaintiff claims that "[i]n New York State, Republican and Democrat lawmakers alike have created unconstitutional additional requirements in attempts to subvert an individual's Constitution[al] right to candidacy, such as [p]laintiff's, by drafting and passing laws with undue burdens, with the goal of preventing the emergence of any new or independent political party." Id. at 2, ¶4. Plaintiff complains that George Washington "warned of such a scenario," quoting Washington's September 17, 1796, farewell address. Id. at 2, ¶5. Plaintiff then reiterates that

> [election] laws in New York State ... [are] unconstitutional [and] continue to subvert the power of the people [because i]ndividuals who are not aligned with any political party and seeking access to the ballot, such as [p]laintiff, are subjected to a barrage of unconstitutional additional requirements which consequently create undue burdens and unfair circumstances to the would-be independent candidate.

Id. at 2, ¶6.

 **\*5**  Plaintiff asserts that he is "an individual over the age of twenty-five, a citizen of the United States for over seven years and a resident of New York State, thus qualified to be elected to Congress pursuant to the United States Constitution." Compl. I at 3, ¶8. Plaintiff "announced a run to represent New York State's 21st Congressional District on or around March 13, 2024." Id. at 3, ¶12. "Plaintiff began circulating an independent nominating petition on April 16, 2024." [9] , [10] Id. at 3, ¶13. "The deadline to file three thousand five hundred (3,500) signatures for an independent nominating petition was May 28, 2024." [11] Id. at 4, ¶14. "Plaintiff filed approximately three thousand eight hundred twenty eight (3,828) signatures on May 28, 2024." Id. at 4, ¶15. Two individuals, including Margaret Bartley, the chair of the Essex County Democratic Committee, "filed general objections and specifications challenging the petition on various grounds." Compl. II at 56-59. After conducting a prima facie examination of the petition, the New York State Board of Elections "invalidated [p]laintiff's independent nominating petition on or around June 13, 2024, claiming [p]laintiff only submitted three thousand four hundred ninety three (3,493) signatures, leaving [p]laintiff seven (7) signatures short of the unconstitutional requirement." Compl. I at 4, ¶16; see Compl. II at 2, ¶10, 59.

[9]    Plaintiff claims that "[t]hose running for a political party [were] able to circulate petitions from February 27, 2024 until April 4, 2024," but "[i]ndependent petitions were circulated between April 16, 2024 and May 28, 2024." Compl. I at 5, ¶¶24-25.

[10]    Plaintiff alleges that he "was unlawfully evicted on or around May 10, 2024." Compl. I at 5, ¶30. Plaintiff does not specify what he means by "unlawfully evicted," or otherwise explain how this relates to the instant action. Id.

[11]    Plaintiff contends that "petitions for political parties have a filing deadline of Thursday, April 4, 2024 while independent nominating petitions have a deadline of Tuesday, May 28, 2024." Compl. I at 7, ¶37.

On June 13, 2024, "[p]laintiff filed a lawsuit in the Albany County Supreme Court challenging [the New York State Board of Elections'] determination." Compl. I at 4, ¶17; see Compl. II at 2, ¶11. Specifically, plaintiff "filed a proposed order to show cause and petition commencing [a special] proceeding pursuant to Election Law § 6-102 seeking to validate his petition." Compl. II at 59. After plaintiff filed multiple amended petitions, "Honorable Christina L. Ryba signed an order to show cause on June 17, 2024 permitting service by overnight mailing on or before June 19, 2024." Id. at 2, ¶12. "Plaintiff served all parties via overnight mailing by June 19, 2024." Id. at 3, ¶13. However, Ms. Bartley and Paula Collins, plaintiff's political opponent in the upcoming election, "had refused 'actual delivery' of the overnight mailing." Id. at 3, ¶15. "Oral arguments were heard on June 28, 2024[,]" when plaintiff explained "that service was completed timely and thus, the special proceeding was initiated

timely." [12] Id. at 3, ¶¶15-16. However, Ms. Bartley argued that the proceeding should be dismissed as untimely because, under N.Y. Elec. Law § 16-102, plaintiff needed to serve all parties by June 18, 2024, and he failed to do so. See id. at 58-61. Following oral arguments, on July 3, 2024, Hon. Ryba dismissed the proceeding as untimely. See Compl. II. at 58-62.

[12]    However, in Lewis I, plaintiff claims the hearing took place "on or around June 11, 2024." Compl. I at 6, ¶32.

Plaintiff now seeks to "challeng[e] the constitutionality of New York State's election laws[,]" including (1) "§ 6-136 and § 6-142, which dictate the number of signatures required for nominating petitions"; (2) "§ 6-158 which mandates the deadlines imposed for filing nominating petitions"; (3) "§ 6-134 which outlines the rules for nominating petitions"; (4) "§ 6-132 and 6-140, laws governing the required form of nominating petitions"; and (5) "16-102 which dictate[s] the institution of a special proceeding." Compl. I at 1 (citing N.Y. ELEC. LAW §§ 6-132, 6-134, 6-136, 6-140, 6-142, 6-158); Compl. II at 1 (citing N.Y. ELEC. LAW § 16-102). Plaintiff alleges that these laws violate "the First and Fourteenth Amendment of the United States Constitution" and he "requests this court to issue declaratory and injunctive relief preventing the New York State Board of Elections ... from enforcing restrictive and unconstitutional laws and ordering [p]laintiff's name on the ballot for the 2024 general election." Compl. I at 3, ¶7; see Compl. II at 1.

### C. Analysis

**\*6**    Liberally construing plaintiff's complaint, he brings claims under 42 U.S.C. § 1983 against the New York State Board of Elections, [13] alleging violations of his First and Fourteenth Amendment rights. [14] See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' ") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); cf. Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) ("The solicitude afforded to pro se litigants ... most often consists of liberal construction of pleadings, ... [however,] the degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation and familiar with the procedural setting presented.").

[13]    "Under New York law, the [New York State Board of Elections] is responsible for, the execution and enforcement of ... statutes governing campaigns, elections and related procedures." Schulz v. Williams, 44 F.3d 48, 61 n.13 (2d Cir. 1994) (citing N.Y. ELEC. LAW § 3-104).

[14]    Although plaintiff refers to various individuals throughout Compl. I and Compl. II, including Ms. Bartley and Ms. Collins, he does not appear to pursue any claims against them in these actions, as he has made clear that he is solely "challenging the constitutionality of New York State's election laws." Compl. I at 1; Compl. II at 1. Moreover, as indicated previously, plaintiff appears to be an experienced litigator. See supra note 1, 7. Earlier this year, the undersigned reviewed a separate complaint filed by plaintiff in a separate action, and added parties that were mentioned in the complaint but not specifically identified in the "parties" section, in efforts to liberally construe plaintiff's submissions and interpret them to raise the strongest arguments that they suggest. See Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 10. Plaintiff was extremely unappreciative of this, as he "explicitly object[ed] to the addition of parties," claimed that the undersigned's actions were "improper," and argued that he correctly pleaded the proper parties in the "parties" section of his complaint. Id., Dkt. No. 13 at 1-2. Thus, because the only party identified in the "parties" section of Compl. I and II is the New York State Board of Elections, and given plaintiff's litigation history, it appears that he does not intend to pursue claims against any other parties. See generally Compl. I, Compl. II. In any event, plaintiff's claims regarding Ms. Bartley and Ms. Collins "amount to nothing more than a rant more fitting of an editorial than a legal pleading." Dillon v. Bush, No. 3:05-CV-188 (LAC/MD), 2005 WL 8163072, at \*5 (N.D. Fla. Aug. 12, 2005).

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Thus, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Kisembo v. N.Y.S. Off. of Child. & Fam. Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)); see Garcia v. Paylock, No. 13-CV-2868 (KAM), 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014) ("Plaintiff's equal protection claims also may not be brought directly under the Fourteenth Amendment because the State has not waived its immunity or had that immunity abrogated pursuant to that constitutional amendment.") (citation omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)); see Torres v. Off. of Adult Prob., No. 3:22-CV-00883 (SALM), 2023 WL 3259781, at *4 (D. Conn. May 4, 2023) (explaining that, although the plaintiff may bring a claim for injunctive relief against individual state officials, the plaintiff may not bring such a claim against the state itself or its agencies) (citing Off. of Consumer Couns. v. S. New Eng. Tel. Co., 502 F. Supp. 2d 277, 291 (D. Conn. 2007)).

**\*7** " '[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.' " Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)); see Marino v. City Univ. of New York, 18 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (explaining that sovereign immunity bars "direct constitutional claim[s] brought directly against a state entity") (citing Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 30-32 (2d Cir. 1991)); see also Rubin v. N.Y. State Dep't of Motor Vehicles, No. 10-CV-4119 (NGG), 2010 WL 3842011, at *1 (E.D.N.Y. Sept. 28, 2010) ("The Eleventh Amendment bars suits against states, their agencies whether the [p]laintiff seeks relief at law or in equity, absent the state's consent to suit or an express or statutory waiver of immunity.") (citing Pennhurst State School & Hosp., 465 U.S. at 99-102). "[T]he Board of Elections is a state agency for the purposes of the Eleventh Amendment[.]" Credico v. N.Y. State Bd. of Elections, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) (citing McMillan v. N.Y. State Bd. of Elections, No. 10-CV-2502 (JG/VVP), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010), aff'd, 449 F. App'x 79 (2d Cir. 2011) (summary order)); see Murawski, 285 F. Supp. 3d at 696 (collecting cases); see also Tiraco v. N.Y. State Bd. of Elections, 963 F. Supp. 2d 184, 191 n.7 (E.D.N.Y. 2013) ("It is undisputed that the State Board [of Elections], a New York state executive agency, is an 'arm of the state' entitled to sovereign immunity.") (citations omitted). Specifically, "common sense and the rationale of the [E]leventh [A]mendment require that sovereign immunity attach" to the New York State Board of Elections. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 50 (1994).

"There are three limited exceptions to state sovereign immunity." Tiraco, 963 F. Supp. 2d at 191. "First, a state may waive its sovereign immunity by consenting to suit in federal court." Id. at 191-92 (citing Iwachiw v. N.Y.C. Bd. of Elections, 217 F. Supp. 2d 374, 379 (E.D.N.Y. 2002), aff'd, 126 F. App'x 27 (2d Cir. 2005) (summary order)) (additional citation omitted). "Second, Congress may abrogate state sovereign immunity by acting pursuant to a grant of constitutional authority." Leibovitz v. Barry, No. 15-CV-1722 (KAM), 2016 WL 5107064, at *5 (E.D.N.Y. Sept. 20, 2016) (citing Kimel v. Fl. Bd. of Regents, 528 U.S. 62, 80 (2000)). "Third, under the Ex parte Young doctrine, sovereign immunity does not preclude a plaintiff from seeking prospective injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law." Tiraco, 963 F. Supp. 2d at 192 (citing State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007)); see Anghel v. N.Y. State Dep't of Health, 947 F. Supp. 2d 284, 298 (E.D.N.Y. 2013) ("[T]he doctrine of Ex Parte Young, ... 'allows a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law.' ") (quoting CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002)), aff'd, 589 F. App'x 28 (2d Cir. 2015) (summary order).

However, none of these exceptions apply here. First, New York has not expressly waived its sovereign immunity with respect to the claims asserted in plaintiff's complaints. See Edelman v. Jordan, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.' ") (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)). "It is well-established

Case 1:25-cv-00188-AMN-TWD    Document 6    Filed 03/26/25    Page 16 of 41

that New York has not consented to § 1983 lawsuits in federal court[.]" *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) (citation omitted); *see Iwachiw*, 217 F. Supp. 2d at 379-80 ("New York State has not waived its Eleventh Amendment [immunity] in claims involving write-in candidates in United States Senatorial Primaries[.]"); *see also Dekom v. New York*, No. 12-CV-1318 (JS/ARL), 2013 WL 3095010, at *10 (E.D.N.Y. June 18, 2013) (dismissing § 1983 claims against the New York State Board of Elections on Eleventh Amendment immunity grounds), *aff'd*, 583 F. App'x 15 (2d Cir. 2014) (summary order).

**\*8** Second, Congress has not "abrogated New York's sovereign immunity from suit by acting pursuant to a grant of constitutional authority." *Tiraco*, 963 F. Supp. 2d at 192. Indeed, 42 U.S.C. § 1983 does not override New York's sovereign immunity. *See Mayo v. Doe*, 480 F. Supp. 3d 395, 402 (D. Conn. 2020) ("Section 1983 does not abrogate state sovereign immunity") (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)); *see also Sierotowicz v. N.Y. Div. of Hous. & Cmty. Renewal*, No. 04-CV-3886 (NGG/LB), 2005 WL 1397950, at *1 (E.D.N.Y. June 14, 2005) (holding that 42 U.S.C. § 1983 does not override New York's Eleventh Amendment sovereign immunity).

Third, the *Ex Parte Young* doctrine does not appear to salvage plaintiff's claims for injunctive and declaratory relief against the New York State Board of Elections. *See Tiraco*, 963 F. Supp. 2d at 192; *see Ex parte Young*, 209 U.S. 123 (1908). Indeed, plaintiff "does not follow the requirement, established in *Ex Parte Young*, that a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly." *Santiago*, 945 F.2d at 32 (citing *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102); *see Melrose v. N.Y. State Dep't of Health Off. of Pro. Med. Conduct*, No. 05-CV-8778 (SCR/LMS), 2009 WL 211029, at *5 (S.D.N.Y. Jan. 26, 2009) ("[T]he Second Circuit still requires that state officers be named in order for the *Ex Parte Young* exception to apply.") (citations omitted); *see also Harris v. N.Y. State Educ. Dep't*, 419 F. Supp. 2d 530, 534 (S.D.N.Y. 2006) ("Actions for injunctive relief under the *Ex parte Young* exception to [sovereign immunity] constitute suits against state officials, not against the state or state agency itself.").

Specifically, although plaintiff seeks injunctive relief, he has only named the New York State Board of Elections and has failed to name any individual state official as a defendant. *See Tiraco*, 963 F. Supp. 2d at 192 (dismissing the plaintiff's claims asserted against the New York State Board of Elections based on sovereign immunity, notwithstanding that the plaintiff sought prospective injunctive and declaratory relief, because he "failed to name any state official as a defendant"); *cf. Gallagher v. New York State Bd. of Elections*, 477 F. Supp. 3d 19, 37 (S.D.N.Y. 2020) ("Plaintiffs' ... claims against the [New York State Board of Elections], therefore, are barred by sovereign immunity. But their federal claims against the [Board's] officers and Governor Cuomo ... are not barred.") (citations omitted); *Cohen v. Richardson*, No. 1:23-CV-00224 (AMN/CFH), 2024 WL 418788, at *3 (N.D.N.Y. Feb. 5, 2024) (concluding that the Eleventh Amendment did not bar the plaintiff's suit, where the plaintiff "only [sought] declaratory and prospective injunctive relief" against named individuals employed by the New York State Board of Elections) (citing *Cecos Int'l, Inc. v. Jorling*, 706 F. Supp. 1006, 1024 (N.D.N.Y. 1989) ("[T]he [E]leventh [A]mendment does not forbid federal courts from granting injunctive relief against a state official acting contrary to the United States Constitution."), *aff'd*, 895 F.2d 66 (2d Cir. 1990)), *reconsideration denied*, 2024 WL 3653801 (N.D.N.Y. Aug. 5, 2024).

Consequently, the New York State Board of Elections is entitled to sovereign immunity. *See Yang v. Kellner*, 458 F. Supp. 3d 199, 208 (S.D.N.Y.) ("Because New York has not consented to be sued, and because Congress has not enacted legislation abrogating New York's Eleventh Amendment immunity with regard to [the p]laintiffs' ... causes of action, the claims against the [Board of Elections] as a state agency are barred by sovereign immunity."), *aff'd sub nom. Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020); *see also McMillan*, 449 F. App'x at 80 (affirming dismissal of the plaintiff's claims against the New York State Board of Elections as barred by the Eleventh Amendment); *Ulanov v. N.Y. State Bd. of Elections*, No. 22-CV-193 (AMD/LB), 2022 WL 173112, at *2 (E.D.N.Y. Jan. 19, 2022) ("Accordingly, the New York State Board of Elections is immune from suit, and the plaintiff's claims against it must be dismissed."), *reconsideration denied*, 2022 WL 767865 (E.D.N.Y. Mar. 14, 2022).

**\*9** "The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction." *Griffith v. New York State*, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *5 n.4 (N.D.N.Y. Mar. 20, 2024) (citing *Crumble v. United States*, No. 1:23-CV-4427 (LTS), 2023 WL 5102907, at *7 (S.D.N.Y. Aug.

7, 2023), and <u>Nguyen v. Kijakazi</u>, No. 20-CV-0607 (MKB), 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022)), <u>report and recommendation adopted</u>, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024); <u>see Wang v. Delphin-Rittmon</u>, 664 F. Supp. 3d 205, 217 (D. Conn. 2023) ("[S]overeign immunity strips the court of jurisdiction[.]") (citing <u>Smith v. Scalia</u>, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014), <u>aff'd</u>, 2015 WL 13710107 (D.C. Cir. 2015)); <u>see Iwachiw</u>, 217 F. Supp. 2d at 383 (dismissing the plaintiff's section 1983 action against the New York State Board of Elections for lack of subject matter jurisdiction under the Eleventh Amendment, noting "[t]he Eleventh Amendment is an explicit limitation on federal jurisdiction") (internal quotation marks and citations omitted). Thus, it is recommended that plaintiff's claims against the New York State Board of Elections be dismissed without prejudice for lack of subject matter jurisdiction. <u>See Abadi v. City of New York</u>, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed without prejudice.") (citing <u>Katz v. Donna Karan Co., L.L.C.</u>, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]")).

### IV. Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Nielsen v. Rabin</u>, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " <u>Edwards v. Penix</u>, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, it is not an entirely foregone conclusion that plaintiff could amend his complaint to state a claim. <u>See Meyers v. Becker</u>, No. 1:23-CV-173 (DNH/CFH), 2023 WL 3079611, at *6 (N.D.N.Y. Apr. 5, 2023), <u>report and recommendation adopted</u>, 2023 WL 3073495 (N.D.N.Y. Apr. 25, 2023); <u>see also Stiegman v. New York State Off. of Info. Tech. Servs.</u>, No. 1:19-CV-18 (GTS/CFH), 2019 WL 1762900, at *5 (N.D.N.Y. Apr. 22, 2019) (dismissing the plaintiff's claims against a New York state agency as barred by sovereign immunity, but granting the plaintiff leave to amend should the plaintiff wish to name an individual state official pursuant to the <u>Ex Parte Young</u> exception), <u>report and recommendation adopted</u>, 2019 WL 4727444 (N.D.N.Y. Sept. 27, 2019). Thus, it is recommended that plaintiff's complaint be dismissed without prejudice and with leave to amend should plaintiff wish to name a proper party or plead a proper claim. [15]

[15]   Any amended pleading supersedes and replaces a prior pleading in its entirety. In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. <u>See, e.g.</u>, <u>Anthony v. Fein, Such & Crane, LLC</u>, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's second amended complaint"), <u>report and recommendation adopted</u>, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015). Further, an amended complaint may not replead any claims or defendants dismissed by this Court with prejudice. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

### V. Conclusion

**\*10  WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application for leave to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against the New York State Board of Elections be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; and it is

**RECOMMENDED**, that this matter (8:24-CV-00849, "Lewis I") be **CONSOLIDATED** with 8:24-CV-01036 ("Lewis II"), with the lead case being 8:24-CV-00849, and the member case being 8:24-CV-01036; and it is further

**RECOMMENDED**, that, if consolidation is granted, this Report-Recommendation and Order be docketed and served in all cases, with future filings to be docketed in only the lead case; and it is

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint within that time frame, the case be closed without further order by the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [16]

[16]   If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2024 WL 4910561

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4689022
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

NEW YORK STATE BOARD OF ELECTIONS, Defendant.
Scott Phillip Lewis, Plaintiff,

v.

New York State Board of Elections, Defendant.

8:24-CV-0849 (GTS/CFH), 8:24-CV-1036 (GTS/CFH)

|

Signed November 6, 2024

**Attorneys and Law Firms**

SCOTT PHILLIP LEWIS, Plaintiff, Pro Se, 1936 Saranac Ave, #3, PMB 411, Lake Placid, NY 12946.

HON. LETITIA A. JAMES, AIMEE COWAN, ESQ., Assistant Attorney General, Counsel for Defendant, 300 South State Street, Suite 300, Syracuse, NY 13202.

**<u>DECISION and ORDER</u>**

GLENN T. SUDDABY, United States District Judge

 **\*1** Currently before the Court, in each of the two above-captioned civil rights actions filed by Scott Phillips Lewis ("Plaintiff") against the New York State Board of Elections ("Defendant"), is a Report-Recommendation by United States Magistrate Judge Christian F. Hummel recommending that (1) the matters be consolidated, with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036, and (2) Plaintiff's Complaint in each action be *sua sponte* dismissed without prejudice and with leave to amend. (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28.) In each action, Plaintiff has filed an Objection, and Defendant has filed a Response to that Objection. (Action No. 8:24-CV-0849, Dkt. Nos. 27, 28; Action No. 8:24-CV-1036, Dkt. Nos. 30, 31.) For the reasons set forth below, each Report-Recommendation is accepted and adopted in its entirety, the matters are consolidated (with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036), and Plaintiff's Complaint in each action shall be dismissed unless Plaintiff files an Amended Complaint within thirty days of the entry of this Decision and Order.

As an initial matter, the Court finds that (1) because neither of Plaintiff's Objections challenges Magistrate Judge Hummel's recommendation regarding consolidation, that recommendation need be (and is) reviewed only for clear error,[1] and (2) that recommendation survives that clear-error review for the reasons stated in each Report-Recommendation. (Action No. 8:24-CV-0849, Dkt. Nos. 27, 25; Action No. 8:24-CV-1036, Dkt. Nos. 30, 28.)

1    When no specific objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific

objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(C); *see, e.g., Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

**\*2** Turning to Magistrate Judge Hummel's recommendation regarding the dismissal of Plaintiff's Complaint without prejudice and with leave to amend, the Court begins by finding that, even when viewed with the utmost of special leniency, neither of Plaintiff's Objections contains a specific challenge to either Report-Recommendation other than a specific challenge to the recommended dismissal of each Complaint on the grounds that Defendant is entitled to sovereign immunity. (Action No. 8:24-CV-0849, Dkt. No. 27; Action No. 8:24-CV-1036, Dkt. No. 30.) As a result, the remaining portions of each Report-Recommendation need be (and are) reviewed only for clear error, which the Court finds they survive for the reasons stated in each Report-Recommendation. (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28.)

Finally, with regard to Plaintiff's specific challenge to the recommended dismissal of each Complaint on the grounds that Defendant is entitled to sovereign immunity, the Court must review each such recommendation *de novo*.[2] After doing so, the Court finds that each recommendation survives that *de novo* review for the reasons stated in each of Defendant's Responses: Magistrate Judge Hummel employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Action No. 8:24-CV-0849, Dkt. No. 28; Action No. 8:24-CV-1036, Dkt. No. 31.) As a result, the challenged portion of each Report-Recommendation is also accepted and adopted in its entirety for the reasons stated therein. (*Id.*)

[2]      When a specific objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).

To those reasons, the Court adds only that, as argued by Defendant in each of its Responses, is well established that Defendant is a state agency for the purposes of the Eleventh Amendment. *See, e.g., McMillan v. New York State Bd. of Elections*, 10-CV-2502, 2010 WL 4065434, at \*3 (E.D.N.Y. Oct. 15, 2010) ("The State Board [of Elections] is a state agency for the purposes of the Eleventh Amendment."), *aff'd*, 449 F. App'x 79 (2d Cir. 2011) (summary order); *Iwachiw v. New York City Bd. of Elections*, 217 F. Supp. 2d 374, 380 (E.D.N.Y. 2002) ("[T]he Eleventh Amendment bars the Section 1983 action against the State Board of Elections."), *aff'd, Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27 (2d Cir. 2005); *Murawski v. New York State Bd. of Elections*, 285 F. Supp. 3d 691, 696 (S.D.N.Y. 2018) ("The State Board of Elections is a state agency for the purposes of the Eleventh Amendment ....") (internal quotation marks omitted); *Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 191 n.7 (E.D.N.Y. 2013) ("It is undisputed that the State Board [of Elections], a New York state executive agency, is an 'arm of the state' entitled to sovereign immunity."); *Credico v. New York State Bd. of Elections*, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) ("[T]he Board of Elections is a state agency for the purposes of the Eleventh Amendment ....").

**ACCORDINGLY**, it is

**ORDERED** that each Report-Recommendation in the two above-captioned actions (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the two above-captioned actions are **CONSOLIDATED** pursuant to Fed. R. Civ. P. 42(a) (with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036); and it is further

2024 WL 4689022

**ORDERED** that Plaintiff's Complaint in each action (Action No. 8:24-CV-0849, Dkt. No. 1; Action No. 8:24-CV-1036, Dkt. No. 1) **shall be** **DISMISSED** without further Order of the Court, **UNLESS, within THIRTY (30) DAYS** of the entry of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in each Report-Recommendation; and it is further

**\*3** **ORDERED** that, should Plaintiff file a timely Amended Complaint, that Amended Complaint shall be, without further Order of this Court, referred to Magistrate Judge Hummel for his review of its pleading sufficiency.

Because the Court certifies that any appeal from this Decision and Order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), the Court revokes Plaintiff's *in forma pauperis* status on any appeal from this Decision and Order.

**All Citations**

Slip Copy, 2024 WL 4689022

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1016392
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS, et al., Defendants.

6:23-cv-1485 (DNH/TWD)
|
Signed March 8, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, pro se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

 **\*1** The Clerk has sent to the Court for review a *pro se* civil rights complaint filed by Willie Thomas Gosier ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of June 11, 2023, traffic stop in Rome, New York. (Dkt. No. 1.) Plaintiff has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

At the time Plaintiff commenced this action, he was an inmate at the Oneida County Correctional Facility. (Dkt. Nos. 1, 2.) Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. [1] Based on that review, it does not appear Plaintiff had acquired three strikes for purposes of Section 1915(g) as of the date this action was commenced. [2]

[1]    *See* http://pacer.uspci.uscourts.gov (last visited Mar. 8, 2024).

[2]    *See Gosier v. Oneida Cnty. District Atty's Office*, No. 6:23-cv-01118 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023; closed on Nov. 2, 2023) ("*Gosier I*"); *Gosier v. Utica Police Dep't*, No. 6:23-cv-01119 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023) ("*Gosier II*"); *Gosier v. Oneida Cnty. Corr. Fac.*, No. 9:23-cv-01134 (DNH/CFH) (N.D.N.Y. filed on Sept. 5, 2023) ("*Gosier III*"); *Gosier v. Paolozzi*, No. 9:23-cv-01135 (GTS/TWD) (N.D.N.Y. filed on Sept. 5, 2023;

closed on Jan. 30, 2024) ("*Gosier IV*"). The Court notes *Gosier I* and *Gosier IV* were *sua sponte* dismissed on initial review and Plaintiff has been granted leave to file amended complaints in *Gosier II* and *Gosier III*.

Upon review of Plaintiff's IFP application, the Court finds Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in this District. (Dkt. Nos. 2, 3.) Accordingly, Plaintiff's IFP application is granted. [3]

[3]     "Although an indigent, incarcerated individual need not prepay the filing fee at the time ... of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). Plaintiff should also note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. SUFFICENCY OF THE COMPLAINT

### A. Standard of Review

**\*2**   Having found Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [4]

[4]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 provides in pertinent part that: "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing

*Twombly*, 550 U.S. at 555). Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Background

 **\*3** The complaint in this action, brought against defendants David J. Collins, Chief of Police of the Rome Police Department, and two unknown police officers, consists of two form complaints—one on the form complaint for civil rights violations pursuant to 42 U.S.C. § 1983 and one on the form complaint for *pro se* prisoner complaints—and four attached narrative pages. (Dkt. No. 1.) The narrative section spans five handwritten pages and is essentially one paragraph with limited punctuation. *See id.* at 8-13. [5] The Court will construe the allegations in the complaint with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"). The following facts are taken from Plaintiff's complaint.

[5]     The Court will refer to the CM/ECF pagination when citing to the complaint. Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On June 11, 2023, between the hours of 6:00 a.m. and 5:00 p.m., Plaintiff was "stopped" by Rome Police Officers "John Doee and John Doee" (the "defendant police officers") in the City of Rome for "speeding" near the Colonial Laundromat. *Id.* at 8. The defendant police officers claimed Plaintiff was going "50 in a 30 zone." *Id.* But Plaintiff "was only doing 35 in a 30 zone which is legal." *Id.* Plaintiff believes he was "targeted and labeled" because he is a young "black mixed person." *Id.* at 11. Plaintiff claims when a "person of color" has "valuable things" like a car, "they ... label you as a drug dealer or a person who conduct's crime." *Id.*

During the traffic stop, the defendant police officers "searched" Plaintiff's name, told Plaintiff he "was under suspention," and instructed him to "get out of [the] car." *Id.* at 8. Plaintiff was "unlawfully" handcuffed, and the defendant police officers conducted a "patdown search" and "searched" the car. *Id.* He was "placed" in the back of the patrol car and "witntnessed" the defendant police officers "pull" his female friend out of the car. *Id.* at 8-9. While holding her arms, "one officer pulled her pant's/panties a way from her body" and "the other reached into her pant's/panties and pulled some thing out completely illegal search." *Id.* at 9. They then took Plaintiff's "book bag's out of the car and trunk 1 book bag was her's with personal paper's, document's item's and looked thru it all[.]" *Id.* "They even took our cell phones" and "searched thru them with no warrent." *Id.* "Still to this date have not gotten my property back none of it they impounded my car. [6] *Id.*

[6]     Plaintiff was able to "get" his car "out" but it "cost me a lot" on a Sunday. (Dkt. No. 1 at 9.) But when he picked up his car, he "had a flat tire and a dent on the passenger side .. [and] had to pay to get inside of car done due to coffiee being spilt on ... swade seats and glitter being all over." *Id.*

Plaintiff claims "driving under a suspention is a misdemeaner and dose not justify handcuffing or conducting a pat down search." *Id.* at 12. "It was a complete unlawful stop and all evidence need's to be suppressed." *Id.*

When Plaintiff "arrived at RPD" on June 11, 2023, the "RPD" did not read Plaintiff his *Miranda* rights, and he was "interrogated" without a lawyer being present and without being told he could have a lawyer. *Id.* at 9-12. "They" asked him questions like, "why was i in Rome what was i doing where did i go in rome why how long ect." *Id.* at 12.

A "couple" of months later, Plaintiff was "charged with what they found in her pant's/panties." *Id.* at 9. On July 15, 2023, he also was "charged with criminal possession of weapon 2nd: loaded firearm-other than person's home/business which charge is still pending against me till this day." *Id.* at 9-10.

 **\*4** Plaintiff alleges the "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence" and violated his constitutional rights. *Id.* at 10. Plaintiff claims "they" had "no ground's to pull me over" and the

defendant police officers "should have had a female cop come and conduct that search" of his female friend. *Id.* at 9. "But even so it would still have been unlawful due to them not having probable cause to search me, my car, or my friend what so ever." *Id.* According to Plaintiff, "it is 100% legal" to drive "35 in a 30 zone" therefore, the stop was "1000% not a valid traffic stop at all" and that he "did not [break] any traffic violations or rule/law's." *Id.* at 10. Plaintiff further claims "it is said in supreme and other higher courts that you do not need a license to drive a car, SUV, truck in the United States ... it is protected by my con. Amendment right travel 4th, 5th amendment rights's." *Id.*

In his prayer for relief, Plaintiff seeks $2,000,000 and "for the officer's to be charged and procicuted for act's and investigate RPD misconduct." *Id.* at 4,13.

## C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Moreover, the theory of respondeat superior is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

## IV. ANALYSIS

The Court construes the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."). Upon review and for the reasons below, the Court finds Plaintiff's complaint fails to comply with the basic pleading requirements and fails to state a claim. Accordingly, the Court recommends dismissal of the complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

## A. Rules 8 and 10

A complaint is subject to dismissal if its "form or substance prevents the defendant from forming a 'fair understanding' of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint." *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 345 (S.D.N.Y. 2014). Ultimately, a complaint must give "fair notice" to the defendants. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("The function of pleadings under the Federal Rules is to give fair notice of the claims asserted." (internal quotation marks omitted)). Rule 8 "demands more than an adorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In this instance, Plaintiff's rambling complaint consists almost entirely of legal conclusions, rather than well-pleaded factual allegations. As explained in more detail below, Plaintiff's complaint does not comply with Rule 8 because Plaintiff does not make a short and plain statement showing that he is entitled to relief from the named defendants. Additionally, Plaintiff's complaint does not comply with Rule 10 because it lacks numbered paragraphs, each limited as far as practicable to a single set of circumstances.

## B. Official Capacity Claims

**\*5** Plaintiff's complaint does not specify whether he intends to bring claims against the named defendants in their individual or official capacities. "A claim asserted against an individual in his official capacity ... is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) ("In bringing suit against defendants in their official capacities, Bryant has effectively brought suit against the governmental unit that employs them, Westchester County[.]"). Thus, the Court considers whether Plaintiff has stated constitutional claims against the City of Rome, who is the real party in interest.

"A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell*, 436 U.S. at 691). Thus, to hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, Plaintiff's claim construed against the City of Rome appears to stem from an isolated instance of alleged unconstitutional conduct by the defendant police officers in the course of a traffic stop. Such an isolated act by a non-policymaking municipal employee is "generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability." *Matusick*, 757 F.3d 31 at 62 (2d Cir. 2014) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 82 (2d Cir. 2012)). But such isolated instances would be a basis for municipal liability if they were done

> pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Jones*, 691 F.3d at 81. The only factual allegations potentially bearing on any such basis for municipal liability are the allegations that Plaintiff is "being targeted" for being a "young and black mixed person of color." (Dkt. No. 1 at 11.) Plaintiff states:

> i feel this is at most descrimination at it's finest and racel profiling. That's a huge violation of my con. Amendment right's. it's not okay or right one bit. Just because im a young black mixed person of color. it is not right that RPD get's a way with thing's like this all the time, nothing ever get's done about it. They do as they please and they find it okay to do such conduct's its completely not okay or right for such act's. This need's to change it's not right at all, right is right wrong is wrong."

*Id.* at 12. The Court infers this is an allegation of racially motivated police conduct. Plaintiff also list "harassment" as a cause of action.[7] *Id.* at 13.

[7]    To the extent the complaint could be construed as asserting a verbal harassment claim, allegations of verbal harassment are insufficient to support a Section 1983 claim. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged")); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional,

or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

**\*6** "The Second Circuit has admonished that courts should 'not condone racially motivated police behavior' and must 'take seriously an allegation of racial profiling.' " *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (quoting *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001)). In this case, however, Plaintiff's "general and conclusory" allegations are insufficient to establish any plausible claim of municipal liability. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Plaintiff alleges no other specific conduct by City of Rome officials, nor does he cite any other facts or circumstances in support of any claim that a policy of racial profiling or racial animus exists in the City. Moreover, insofar as the complaint may allege that employees of the Rome Police Department violated Plaintiff's constitutional rights, those allegations fail to state a claim against the City of Rome because a municipality may not be liable on the basis of respondeat superior. *See Monell*, 436 U.S. at 691.

Accordingly, it is recommended that Plaintiff's official capacity claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue claims against the City of Rome, he must name the City of Rome as a defendant in the list of parties and state facts suggesting that a City policy, custom, or practice caused the violation of his rights during or after the traffic stop.

#### C. Individual Capacity Claims Against Defendant David J. Collins

It is well-settled that "[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at \*1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at \*1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

In this case, Plaintiff names David J. Collins as a defendant in the recitation of parties, but the complaint lacks any specific allegations of wrongdoing by this defendant. Rather, it appears Plaintiff has sued defendant Collins due to the supervisory position he holds. The only reference to defendant Collins in the body of the complaint is as follows, "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence violated my Con. Amendment right's 2nd, 4th, 5th, 14th. So i Willie T. Gosier's Jr's right's have been violated due to an illegal/unlawful stop they had no ground's to pull me over." (Dkt. No. 1 at 10.) Thus, the complaint does not include any plausible allegations of personal involvement by defendant Collins.

Accordingly, it is recommended that Plaintiff's Section 1983 claims against defendant Collins be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue Section 1983 claims against defendant Collins, Plaintiff must sufficiently alleged defendant Collins' personal involvement in the claimed violations.

#### D. Individual Capacity Claims Against Defendants John Doee # 1 and # 2

##### 1. Unlawful Search and Seizure

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A police officer may briefly detain a suspect, consistent with the Fourth Amendment, when the officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

In the context of traffic laws, "reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). Even a "minor" traffic violation meets this standard and provides probable cause for a stop. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (finding police had probable cause to arrest defendant for "not signaling lane changes"), *cert. denied*, 513 U.S. 877 (1994).

**\*7** Here, Plaintiff's claims alleging violations of constitutional rights arising from the traffic stop are undermined by his own admissions in the complaint. [8] Specifically, Plaintiff claims he was pulled over for speeding. (Dkt. No. 1 at 8.) Contrary to Plaintiff's assertion, travelling over maximum speed limits is a violation of New York State Vehicle and Traffic Law, thus providing probable cause for the traffic stop. *See* N.Y. Veh. & Traf. Law § 1180(d).

[8]     As described above, Plaintiff also takes issue with the June 11, 2023, search of his female friend. However, a *pro se* plaintiff cannot bring any claims on behalf of any other plaintiff. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (because *pro se* means to appear for oneself, a person may not appear on another person's behalf in the other's cause).

Though Plaintiff contends the reason cited by the defendant police officers was pretextual, the subjective intent of an officer performing a traffic stop is irrelevant. *United States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."); *see, e.g.*, *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (dismissing the plaintiff's Fourth Amendment "racial profile claim" where the officers "had probable cause to believe [the plaintiff] violated New York traffic laws").

Once a lawful traffic stop based on probable cause has occurred, a police officer may make "ordinary inquiries incident to the traffic stop," and "[t]ypically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alterations omitted). Additionally, if the traffic stop is lawful, neither the driver nor any passengers have a "Fourth Amendment interest in not being ordered out of the stopped vehicle." *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000). Indeed, "a police officer may as a matter of course, order" a passenger or a driver out of "a lawfully stopped car." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam)).

Based on the information provided in the complaint, it appears the defendant police officers learned Plaintiff did not have a valid driver's license. Plaintiff alleges after the stop, the defendant police officers "searched my name they then returned told me i was under suspension which i was not under suspention told me get out of my car and unlawfully handcuffed me conducted a patdown search of me searched my car with out probable cause place me in the back of the patrole car." (Dkt. No. 1 at 8.) The defendant police officers also searched Plaintiff's friend and "some thing" was "pulled" from her "pant's/panties." *Id.* at 8-9. Plaintiff also accuses the defendant police officers of invading his "privacy" when they conducted a "pat down search," searched his car, and "took" his personal belongings including paperwork, documents, cell phones, and book bags without consent or a warrant. (Dkt. No. 1 at 3.) Plaintiff was then apparently taken to the Rome Police Department. *Id.* at 11-12. There are no allegations that the stop lasted any longer than necessary. As such, Plaintiff has not stated a constitutional claim concerning a prolonged and unconstitutional seizure. *See Rodriguez*, 575 U.S. at 354.

**\*8** Insofar as Plaintiff claims that "driving under a suspention is a misdemeanor" and does "not justify handcuffing and or conducting a patdown search," and "you do not need a license to drive a car ... in the United States of America," Plaintiff is mistaken. (Dkt. No. 1 at 10, 12.) Under New York's Vehicle & Traffic Laws, a valid driver's license is required to operate a motor vehicle. *See* N.Y. Veh. & Traf. Law § 509; *see also id.* § 511 (prohibiting operating a car without a valid license). Thus, while the precise details are unclear, it appears the defendant police officers likely had probable cause to believe Plaintiff had committed a criminal offense. And a search incident to an arrest, "constitutes an exception to the warrant requirement" imposed by the Fourth Amendment. [9] *Riley v. California*, 573 U.S. 373, 382 (2014).

9    In New York a person is guilty of Criminal Possession of a Weapon in the second degree if he or she possesses a
     loaded firearm and does not have a license to possess such a firearm. *See Bannister v. Luis*, No. 18-CV-7285, 2022 WL
     19402512, at *45 (E.D.N.Y. Feb. 16, 2022) (citing N.Y. Penal Law § 265.03), *report and recommendation adopted as
     modified*, 2023 WL 2325680 (E.D.N.Y. Mar. 2, 2023). Under New York law, the existence of a firearm in an automobile
     creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm,
     absent certain statutory exceptions which are inapplicable here. *Id.* "If a jury may make a presumption of possession
     under the law, it is reasonable for a police officer to do the same." *Id.* Thus, regardless of whether the firearm was found
     on the Plaintiff's person or in his car, the officers had probable cause for his arrest.

Additionally, the automobile exception to the warrant requirement of the Fourth Amendment permits officers to "conduct a
warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime."
*United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012). Probable cause requires only a "fair probability" that evidence of a
relevant violation will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When the exception
applies, officers may search any area of the vehicle in which they have "probable cause to believe contraband or evidence is
contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If
probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its
contents that may conceal the object of the search."); *see also United States v. Harris*, No. 21-CR-376, 2022 WL 13798289,
at *2 (E.D.N.Y. Oct. 21, 2022).

In sum, based on the information provided in Plaintiff's complaint, it appears the defendant police officers likely had probable
cause to stop and arrest Plaintiff. Armed with probable cause, the search of Plaintiff's person and vehicle appears to have been
a lawful search incident to arrest. *See United States v. Jenkins*, 496 F.2d 57, 79 (2d Cir. 1974) (finding search prior to arrest
to be lawful "as long as probable cause to arrest existed at the time of the search"); *see generally Thornton v. United States*,
541 U.S. 615, 617 (2004) (holding search of vehicle's passenger compartment to be contemporaneous incident of arrest, though
driver arrested outside vehicle).

Accordingly, it is recommended that Plaintiff's Section 1983 illegal search and seizure claim against the defendant police officers
be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [10]

10   Plaintiff claims he was "charged" with "what they found" on his friend's person and also charged with "possession of a
     weapon 2nd: loaded firearm-other than person's home/business." (Dkt. No. 1 at 9-10.) Plaintiff states "the loaded firearm
     charge" is "still pending against me till this day." *Id.* at 10. The Court notes, however, that under abstention principles,
     the Court typically refrains from intervening in a state-court criminal proceeding. *See, e.g.*, *Sprint Commc'ns, Inc. v.
     Jacobs*, 571 U.S. 69, 73 (2013). Moreover, to the extent that Plaintiff seeks the remedy of "suppression" of any items
     seized during the search, that remedy is simply inapplicable in a § 1983 suit. *See Townes v. City of New York*, 176 F.3d
     138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine ... is inapplicable to civil § 1983 actions.").

### 2. False Arrest

 **\*9**  "A [Section] 1983 claim for false arrest[ ] resting on the Fourth Amendment ... is substantially the same as a claim for
false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). "Under New York law,
a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and
without justification." *Id.* Probable cause "is a complete defense to an action for false arrest" brought under New York law or
section 1983. *Id.* (citation omitted). Police officers have probable cause to arrest when they possess "knowledge of, or reasonably
trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief
that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir.
2007) (collecting cases); *see, e.g.*, *Johnson v. Harron*, No. 91 Civ. 1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995)
(concluding that DMV computer information showing driver's license was suspended established probable cause for arrest).

Read liberally, the complaint may raise a claim for false arrest. Plaintiff claims he was handcuffed, placed in the patrol car, was taken to the Rome Police Department, and was not read his *Miranda* rights. (Dkt. No. 1 at 8-12.) But the complaint focuses on the initial traffic stop and search and does not include details about the basis for the arrest that would allow the Court to evaluate whether he was arrested without justification. Accordingly, it is recommended that Plaintiff's Section 1983 false arrest claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [11]

[11]    If Plaintiff intends to bring such a claim, he should amend his complaint to add facts establishing that he was arrested without justification and the disposition of any charges.

### 3. Excessive Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017) (internal quotations omitted). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

Here, "excessive force" is listed as a cause of action. (Dkt. No. 1 at 13.) Plaintiff claims he was "unlawfully pulled out of [his] car," "handcuffed" and subjected to a "pat down search." *Id.* at 8. With this allegation and nothing more, there are simply not enough facts present to establish a plausible excessive force claim. *See Burroughs v. Petrone*, 138 F. Supp. 3d 182, 214 (N.D.N.Y. 2015) (excessive force claim based on rough pat and frisk and push by officers, without other facts or injury alleged, dismissed); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) (declining to find any constitutional violation from plaintiff's allegations of officers' forceful behavior, including a "single push," during the time he was handcuffed).

Accordingly, it is recommended that Plaintiff's Section 1983 excessive force claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 4. Due Process

The complaint lists "5th Due Prosses" as a claim and Plaintiff states "I also have a privilege aganced self incrimination suspect's statement's, comment's remark's before *Miranda* rights cant be used in court." (Dkt. No. 1 at 12, 13.) "While a defendant has a constitutional right not to have a coerced statement used against him, the failure to provide *Miranda* warnings does not constitute a Fifth Amendment violation or a violation of federal law." *Jallow v. Geffner*, No. 23-CV-3969, 2024 WL 37073, at *10 (S.D.N.Y. Jan. 2, 2024) (citing *Vega v. Tekoh*, 597 U.S. 134, 142-152 (2022)); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (relying on *New York v. Quarles*, 467 U.S. 649, 654 (1984) (a defendant does not have a constitutional right to receive *Miranda* warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination)).

 **\*10** Generally, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Gentry v. New York*, No. 1:21-CV-319 (GTS/ML), 2021 WL 3037709, at *7-8 (N.D.N.Y. June 14, 2021), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (quoting *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003))). "The failure to inform a plaintiff of his rights under *Miranda*, 'does not, without more, result in § 1983 liability.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 346). "The

remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)) (internal quotations omitted). However, " '[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 348 (internal citations omitted)).

Here, the complaint does not allege any facts that would plausibly suggest police coercion led to inculpatory statements. As a result, it is recommended that Plaintiff's Section 1983 due process claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 5. Right to Travel

The complaint lists "5th right to travel" as a claim. (Dkt. No. 1 at 3, 13.) "The Constitution protects a fundamental right to travel within the United States," *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009), but "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]" *Scott v. Crossway*, No. 1:22-CV-500 (BKS/CFH), 2022 WL 16646531, at *10 (N.D.N.Y. Nov. 3, 2022) (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted)), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023);

Even liberally construed, Plaintiff has not alleged any facts to suggest a violation of his constitutional right to travel. Plaintiff's allegations regarding his right to travel relate to the traffic stop and seizure of his vehicle, which is akin to his illegal search and seizure claim. *See, e.g., Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at *6 (N.D.N.Y. July 24, 2019), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019); *Bey v. D.C.*, No. 17-CV-6203, 2018 WL 5777021, at *6 (E.D.N.Y. Nov. 1, 2018) (dismissing the plaintiff's "right to travel claim" where the plaintiff retained his ability and constitutional right to travel even if "inconvenienced" by the seizure of his motor vehicle.");[12] *see also Johnson El v. Bird*, No. 19-CV-5102, 2020 WL 5124920, at *5 n.8 (S.D.N.Y. Aug. 31, 2020) ("To the extent Plaintiff means to argue that traffic enforcement violates his right to travel, that claim is dismissed as frivolous.") (citing *Annan v. State of N.Y. Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd*, 662 F. App'x 85 (2d Cir. 2016) (summary order)).

[12]    To the extent Plaintiff claims the defendant police officers deprived him of a property interest by impounding his car, Plaintiff has not pled facts sufficient to establish that he was deprived of that interest without due process. *See, e.g., Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 304 (S.D.N.Y. 2020) (noting that where the defendants' impounded the plaintiff's car following a traffic stop the conduct did not implicate procedural due process concerns); *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *12 (S.D.N.Y. Mar. 5, 2020) (noting that the plaintiff fails to allege the inadequacy of any post-deprivation hearings following the impoundment of his vehicle); *Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *10 (S.D.N.Y. Nov. 5, 2019) (dismissing plaintiff's Fourteenth Amendment claim regarding the deprivation of his vehicle because the plaintiff has not plausibly alleged that the process he received was insufficient).

**\*11**  The Court therefore recommends dismissing Plaintiff's Section 1983 right to travel claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 6. Right to Bear Arms

The complaint lists "2nd Bear Arm's" as a claim. (Dkt. No. 1 at 13.) The "Second Amendment protects 'an individual right to keep and bear arms.' " *District of Columbia v. Heller D.C. v. Heller*, 554 U.S. 570, 595 (2008). But "[l]ike most rights, the right

secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. For example, the Second Amendment allows "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 627-28.

Here, Plaintiff's conclusory allegation regarding his right to "Bear Arm's" provided by the Second Amendment is insufficient to state a plausible claim for relief given the numerous limitations on an individual's right to bear arms. *See, e.g., McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *8 (E.D.N.Y. July 15, 2016) (dismissing the plaintiff's conclusory allegation that defendant detectives violated his Second Amendment right "to keep and bear arms" where, *inter alia*, was charged with criminal possession of a weapon second degree in a felony complaint); *see also Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020) ("The mere occurrence of a firearm seizure during a traffic stop, however, is not enough to establish a Second Amendment violation. Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such.").

Accordingly, the Court recommends dismissing Plaintiff's Section 1983 right to bear arms claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [13]

[13]    *See also supra* note 10 and accompanying text.

### E. Private Prosecution

To the extent Plaintiff seeks an order from this Court directing the defendants to be "charged and prosicuted for Act's and investigate RPD misconduct," (Dkt. No. 1 at 3, 13), he is not entitled to such an order because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court[.]" *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

### F. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having recommended dismissal of the federal claims of which the Court has original jurisdiction, it is also recommended that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

### V. OPPORTUNITY TO AMEND

**\*12**  Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

For reasons set forth above, the Court finds Plaintiff's complaint is subject to dismissal in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) for failure to state a claim. However, in light of his *pro se* status, prior to outright dismissal of this action, the Court recommends that Plaintiff be given an opportunity to amend his pleading.

Plaintiff is advised that, should the District Court permit Plaintiff to file an amended complaint, and if he chooses to avail himself of an opportunity to amend, such amended pleading must cure the defects set forth above. [14] Specifically, the pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). The body of the pleading must contain sequentially numbered paragraphs containing only one act of alleged misconduct per paragraph. Fed. R. Civ. 10. No portion of any prior complaint shall be incorporated into the amended complaint and piecemeal pleadings are not permitted.

[14]    Plaintiff should not submit an amended complaint before the District Court issues a Decision and Order on this Report-Recommendation. As noted below, however, Plaintiff may file written objections to this Court's Report-Recommendations.

The Court notes that in *Gosier II*, Plaintiff alleged he was "pulled over" on June 11, 2023, by officers of the Utica Police Department "without probable cause and proceeded to illegally search [his] vehicle." *Gosier II*, No. 6:23-cv-01119 (DNH/TWD), ECF Dkt. No. 1 at 9. Plaintiff also alleged he was "maliciously prosecuted" and "arrested and charged with Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd." *Id.* Plaintiff's original complaint was *sua sponte* dismissed on initial review with leave to amend. *Id.*, ECF Dkt. Nos. 10, 12. On February 5, 2024, Plaintiff's request for an extension of time until March 16, 2024, to submit his amended complaint was granted. *Id.*, ECF Dkt. No. 19. At this juncture, it is unclear whether the subject traffic stop in *Gosier II* is the same traffic stop at issue in this action. Plaintiff should explain the relationship, if any, between the June 11, 2023, traffic stop at issue in this action and the June 11, 2023, traffic stop at issue in *Gosier II*.

**VI. CHANGE OF ADDRESS**
According to information publicly available on the website maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"), Willie Gosier (DIN 22B2574) was released from custody on parole on February 26, 2024. [15] Plaintiff is reminded that he must update his address with the Court immediately upon relocating. For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

[15]    *See* http://nysdoccslookup.doccs.ny.gov (last visited Mar. 8, 2024).

**VII. CONCLUSION**
 **\*13 WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with **LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [16] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[16]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 1016392

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1307035
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS et al., Defendants.

6:23-CV-1485
|
Signed March 27, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, Pro Se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On November 29, 2023, *pro se* plaintiff Willie Thomas Gosier ("plaintiff"), who was recently released to State parole, filed this 42 U.S.C. § 1983 action alleging that the defendants violated his civil rights during a traffic stop in Rome, New York. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 2, 3.

On March 8, 2024, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4.

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon *de novo* review, the R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty (30) days in which to file an amended complaint that conforms with the specific instructions set forth in the R&R;

4. If plaintiff timely files an amended pleading, the Clerk is directed to return the matter to Judge Dancks for further review as appropriate;

5. If plaintiff does not timely file an amended pleading, the Clerk is directed to close this matter without further Order of the Court.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 1307035

---

**End of Document**                                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Robinson v. Hallett, Not Reported in Fed. Supp. (2020)

2020 WL 1227142

2020 WL 1227142
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ronald ROBINSON, Plaintiff,

v.

John HALLETT, Defense Attorney; Kim Martuewicz, Judge; Kristyna S. Mills, District
Attorney; Detective Golden, ID #19; Detective Bickel; and George Shaffer, III, Defendants.

5:19-cv-406 (MAD/ATB)
|
Signed 03/13/2020

**Attorneys and Law Firms**

RONALD ROBINSON, 17-B-1911, Groveland Correctional Facility, 7000 Sonyea Road, Sonyea, New York 14556, Plaintiff,
pro se.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge:

**I. INTRODUCTION**

**\*1** Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") on February 4, 2019, seeking monetary
relief for alleged violations of his civil rights. Dkt. No. 1 at 14. The action was transferred from the Western District of New
York to this Court. Dkt. Nos. 1, 5. On March 6, 2019, Plaintiff filed a letter motion to withdraw his complaint, which this Court
granted. Dkt. Nos. 4, 7. Plaintiff requested the case be reopened, claiming that another inmate filed the letter motion under
Plaintiff's name without his permission. Dkt. No. 9. Plaintiff also moved to proceed *in forma pauperis* ("IFP"). Dkt. No. 10.
Subsequently, Plaintiff filed an amended complaint. Dkt. No. 15. The motions and the complaint were referred to Magistrate
Judge Baxter for review. Dkt. No. 12.

Magistrate Judge Baxter granted the motion to proceed IFP after finding that Plaintiff filed the appropriate forms and satisfied
the economic need requirements. Dkt. No. 15 at 1. In his review, Magistrate Judge Baxter recommended that: (1) the amended
complaint be dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) as against Defendants Mills,
Shaffer and Martusewicz; (2) the amended complaint be dismissed in its entirety without prejudice for lack of jurisdiction
as against Defendant Hallett, without the opportunity to amend; (3) the excessive force claim be dismissed without prejudice
pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as against Defendants Golden and Bickel, with the opportunity to amend; (4) the claim
for false imprisonment go forward as against Defendants Golden and Bickel; (5) Plaintiff be afforded thirty days to amend his
complaint only as to the excessive force claim as against Defendants Golden and Bickel; (6) the case be returned to Magistrate
Judge Baxter after thirty days for review if a second amended complaint is submitted, or for service of the original amended
complaint on Defendants Golden and Bickel if Plaintiff does not file a second amended complaint. *Id.* at 19-20.

Plaintiff filed a response to the Order and Report-Recommendation dated December 26, 2019. Dkt. No. 16. In his response,
Plaintiff did not object to Magistrate Judge Baxter's recommendation, but asked to go forward on the causes of action that have
not been recommended for dismissal. *Id.* Now before the Court is Magistrate Judge Baxter's November 20, 2019, Order and
Report-Recommendation. Dkt. No. 15.

Robinson v. Hallett, Not Reported in Fed. Supp. (2020)
2020 WL 1227142

Case 1:25-cv-00188-AMN-TWD    Document 6    Filed 03/26/25    Page 38 of 41

## II. BACKGROUND

Most of Plaintiff's amended complaint involves facts that led to a state court conviction for which he is still incarcerated. *See* Dkt. No. 13 at 8. Plaintiff's first cause of action is false imprisonment and false arrest. *Id.* Plaintiff alleges that in 2016, the Jefferson County Drug Task Force ("DTF") illegally entered Plaintiff's home. *Id.* DTF allegedly sent an informant to Plaintiff's home to make a controlled buy of drugs with marked money. *Id.* Plaintiff alleges that the informant ran away with the marked money after Plaintiff refused to come to the door, and DTF illegally entered his home to recover the money. *Id.* DTF allegedly told Plaintiff to empty his pockets, and when Defendant Detective Bickel did not find the money, he detained Plaintiff in his police vehicle for four hours while DTF "ransacked" his house. *Id.* at 8-9. Plaintiff's second cause of action is excessive force. *Id.* at 4. Plaintiff makes conclusory statements in his amended complaint about supervisors and individuals failing to follow their department's rules, and subjecting him to unconstitutional excessive force. *Id.* However, Plaintiff's amended complaint does not describe what force was used and why it was excessive. *Id.* at 10. Plaintiff's third cause of action is conspiracy to violate his civil rights. *See id.* at 10-11. Plaintiff alleges that Defendants took action that they, at the time, believed to be lawful, and, in doing so, conspired to violate Plaintiff's constitutional rights. *Id.* at 10-11.

**\*2**  Plaintiff's fourth cause of action alleges nondisclosure of favorable evidence. *Id.* at 11. Plaintiff alleges that Defendant Kristyna Mills, or Defendant George Shaffer, failed to alert the grand jury that there was no warrant to search Plaintiff's home.[1] *Id.* Plaintiff argues that this violates their duty to present exculpatory evidence to the grand jury. *Id.* Plaintiff further alleges that "the defendant misused the grand jury panel, withheld evidence favorable to the Plaintiff, [and] lied to the grand jury panel ... to secure a conviction that was already illegal and unethical[.]" *Id.* at 12.

[1]  Based on Plaintiff's complaint, it is unclear whether Plaintiff alleges that Defendant Mills or Defendant Shaffer engaged in the alleged conduct as the Complaint only refers to the "Jefferson County District Attorney." *See* Dkt. No. 13 at 11.

Plaintiff's fifth cause of action is "conflict of interest." *Id.* Plaintiff alleges his attorney at trial had a conflict of interest when representing him because his attorney also represented the informant. *Id.* Plaintiff alleges that his attorney, Defendant John Hallett, lied to the trial judge when he said he had not represented the informant, and that the court committed a serious error in accepting this representation. *Id.* Plaintiff contends that the jail's visitor log would show that Defendant Hallett visited both him and the informant, and that the informant has also said that Defendant Hallett represented her. *Id.* at 12-13. Plaintiff's sixth and final cause of action is malicious prosecution. *Id.* at 15. Plaintiff alleges that "the Jefferson County District Attorney" knew that Plaintiff's constitutional rights were violated, but tried to hide the errors, committed perjury, withheld favorable evidence, misled the jury, and tainted its function.[2] *Id.*

[2]  Again, it is unclear whether Plaintiff's allegations are as to Defendant Mills or Defendant Shaffer.

## III. DISCUSSION

### A. Legal Standard

Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that - ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the

Robinson v. Hallett, Not Reported in Fed. Supp. (2020)

2020 WL 1227142

Case 1:25-cv-00188-AMN-TWD    Document 6    Filed 03/26/25    Page 39 of 41

complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party declines to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1).

**B. Judicial Immunity**

 **\*3**  Judges are afforded absolute immunity from suit for actions related to the exercise of their judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). Judges maintain judicial immunity "even when [the] judge is accused of acting maliciously and corruptly." *Id.* at 554. Judicial immunity is only defeated by "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity;" or "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted).

Magistrate Judge Baxter correctly determined that Plaintiff's claims against Judge Martusewicz are barred on the basis of judicial immunity because all of the actions alleged were taken within the scope of the judge's judicial capacity. *See* Dkt. No. 15 at 9.

**C. Prosecutorial Immunity**

As Magistrate Judge Baxter correctly concluded, a prosecutor is absolutely immune from liability for virtually all acts associated with his or her function as a prosecutor and advocate. *See Lawlor v. Connelly*, 471 Fed. Appx. 64, 65 (2d Cir. 2012) (citing cases). In fact, the Second Circuit has specifically held that a prosecutor is absolutely immune from liability for withholding exculpatory evidence from a grand jury. *See Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995). Therefore, the Court finds that Plaintiff's Section 1983 claims against Defendants Mills and Shaffer are dismissed with prejudice on prosecutorial immunity grounds.

**D. *Heck v. Humphrey***

As Magistrate Judge Baxter correctly found, Plaintiff is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), from asserting civil rights claims, pursuant to Section 1983, for conflict of interest and malicious prosecution. Dkt. No. 15 at 11-12. Under *Heck* and its progeny, a "§ 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the [plaintiff's] suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis omitted). In this case, Plaintiff's claims arise from facts that led to his state court conviction, for which he is still incarcerated. Dkt. No. 15 at 3. Plaintiff's success here would unquestionably cast doubt on these counts. Therefore, the Court finds that Plaintiff's claims for conflict of interest and malicious prosecution are barred under *Heck. See DiBlaisio v. City of New York*, 102 F.3d 654, 657-59 (2d Cir. 1996). Magistrate Judge Baxter also correctly determined that even if the "conflict of interest" claim is not barred by *Heck*, it is barred because counsel was not acting under color of state law. Dkt. No. 15 at 12-13.

**E. Conspiracy**

Magistrate Judge Baxter recommended that the Court dismiss Plaintiff's conspiracy claim because Plaintiff failed to allege an agreement between the members of the alleged conspiracy to violate Plaintiff's rights. *See id.* at 13. Plaintiff did not object to this portion of Magistrate Judge Baxter's Order and Report-Recommendation. Dkt. No. 16.

Robinson v. Hallett, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00188-AMN-TWD    Document 6    Filed 03/26/25    Page 40 of 41

2020 WL 1227142

Having reviewed these claims and Magistrate Judge Baxter's recommended disposition, the Court finds that Magistrate Judge Baxter correctly determined that Plaintiff has failed to allege facts which plausibly suggest a conspiracy pursuant to Section 1983. Therefore, the Plaintiff's conspiracy claim is dismissed.

## F. False Arrest

 **\*4**  "A § 1983 claim for false arrest, ... including arrest without probable cause, ... is substantially the same as a claim for false arrest under New York law[.]" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). Under both New York law and the Fourth Amendment to the United States Constitution, the elements of a false arrest action are as follows: " '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (quotation omitted).

Currently, there remains an issue of fact as to whether Defendants Golden and Bickel had authority to detain Plaintiff. Therefore, Magistrate Judge Baxter correctly determined that the claim for false imprisonment should go forward as to Defendants Golden and Bickel, as an initial review of the complaint is not the appropriate time to delve into whether there was a search warrant for Plaintiff's residence. Dkt. No. 15 at 17.

## G. Excessive Force

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotations and other citation omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). Proper application of the Fourth Amendment's "objective reasonableness" standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Here, Magistrate Judge Baxter correctly determined that Plaintiff did not allege what "force" was exerted and how it was "excessive." Dkt. No. 15 at 16. Rather, Plaintiff simply alleged that his house was "ransacked" for four hours and that he was kept in a police car during that time. Without more, Plaintiff has failed to plausibly allege a Fourth Amendment excessive force claim.

## H. Opportunity to Amend

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

Magistrate Judge Baxter correctly determined that the claims against Defendants Mills and Shaffer are barred by prosecutorial immunity, the claims against Defendant Martusewicz are barred by judicial immunity, and the claims against Defendant Hallett are barred because counsel did not act under color of state law. Dkt. No. 15 at 17-18. Since these claims are such that any attempt to amend them would be futile, the Court need not provide Plaintiff an opportunity to amend them. Magistrate Judge Baxter also correctly determined that Plaintiff should be given the opportunity to amend his excessive force claim because the complaint indicates there may have been some "force" to which Plaintiff was subjected to that was "excessive." *Id.* at 18.

## IV. CONCLUSION

Case 1:25-cv-00188-AMN-TWD    Document 6    Filed 03/26/25    Page 41 of 41

Robinson v. Hallett, Not Reported in Fed. Supp. (2020)
2020 WL 1227142

**\*5** After carefully considering Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff's response, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's November 20, 2019 Order and Report–Recommendation is **ADOPTED in its entirety;** and the Court further

**ORDERS** that the amended complaint is **DISMISSED in its entirety with prejudice** as against Defendants Mills, Shaffer and Martusewicz; and the Court further

**ORDERS** that the amended complaint be **DISMISSED in its entirety without prejudice** for lack of jurisdiction as against Defendant Hallett, without opportunity to amend; and the Court further

**ORDERS** that Plaintiff's claim of excessive force is **DISMISSED without prejudice** as to Defendants Golden and Bickel, with opportunity to amend; and the Court further

**ORDERS** that Plaintiff be afforded thirty days to amend his complaint only as to his claim of excessive force against Defendants Golden and Bickel; and the Court further

**ORDERS** that upon the expiration of thirty days or any period of time extended by the District Court, the case be returned to Magistrate Judge Baxter for either review of the second amended complaint, if filed, or service for the original amended complaint on Defendants Golden and Bickel if Plaintiff does not file a second amended complaint. [3]

[3] The only surviving claim is Plaintiff's false arrest claim against Defendants Golden and Bickel.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1227142

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.